**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JONATHAN S.PINK, SB# 179685
E-Mail: Jonathan.Pink@lewisbrisbois.com
DANIEL R. LEWIS, SB# 260106
E-Mail: Daniel.Lewis@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Plaintiff Hyper Ice, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

HYPER ICE, INC., a California corporation,

Plaintiff,

vs.

MEDISANA AG, a German Public Company; SHENZHEN COMFORT TECHNOLOGY CO. LTD, DBA EASEPAL GROUP, a Chinese Company, and DOES 1-10,

Defendants.

CASE NO.

COMPLAINT FOR

1. **BREACH OF AN ORAL CONTRACT**
2. **BREACH OF IMPLIED IN FACT CONTRACT**
3. **TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125(a))**
4. **UNFAIR COMPETITION / FRAUDULENT BUSINESS PRACTICE (Bus. & Prof. Code § 17200 *et seq*.)**
5. **UNFAIR COMPETITION / DECEPTIVE ADVERTISING (Bus. & Prof. Code § 17500 *et seq*.)**
6. **BREACH OF FIDUCIARY DUTY**

**JURY TRIAL DEMANDED**



LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

Plaintiff Hyper Ice, Inc. ("Plaintiff"), hereby complains of Defendants Medisana AG ("Medisana"), Shenzhen Comfort Technology Co. Ltd, DBA Easepal Group ("Easepal") (collectively Medisana and Easepal will be referred to as "Defendants") and DOES 1-10 and alleges as follows:

**JURISDICTION AND VENUE**

1. This action arises under the United States Lanham Act, 15 U.S.C. §1051 *et seq.* and contains related California statutory and common law claims. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), since they are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Additionally, the court has subject matter jurisdiction over all of Plaintiff's claims pursuant to 28 U.S.C. § 1332 as the parties are diverse.

2. This Court has specific personal jurisdiction over Medisana as it entered into an oral contract with Plaintiff in California. Additionally, the Court has personal jurisdiction over both Defendants as the harm caused by Defendants was expressly aimed at Plaintiff which resides in California. Additionally, specific jurisdiction exists as a result of the Defendants selling infringing products into the stream of commerce knowing such products would be sold in this state and this district, which acts form a substantial part of the events or omissions giving rise to Plaintiff's claims.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b). A substantial part of the events giving rise to this action occurred in this district.

/ / /

/ / /

**THE PARTIES**

4. Plaintiff Hyper Ice, Inc., is a California Corporation with a principal place of business at 15440 Laguna Canyon Rd. #230, Irvine, CA 92618.

5. On information and belief, Defendant Medisana AG is a German public company residing at Jagenbergstraße. 19, D- 41468 Neuss, Germany.

6. On information and belief, Defendant Easepal is a Chinese company located in Shenzhen City, China.

7. Plaintiff is currently unaware of the true names and capacities of the remaining Defendants named herein as Does 1 through 10, inclusive, and Plaintiff therefore sues said Defendants by those fictitious names. Plaintiff will request leave of this Court to amend this Complaint to state their true names and capacities when it ascertains the same. Plaintiff alleges, on information and belief, that each such fictitiously named Defendant is in some manner responsible for the acts alleged herein and that such Defendants proximately caused the injuries alleged herein.

**GENERAL ALLEGATIONS**

8. Plaintiff markets and sells a product called VYPER. The VYPER is a cutting-edge fitness and recovery device/roller that uses pressure and vibration to improve the body's overall performance.

9. The VYPER product consists of a distinctive trade dress in the overall design of the VYPER (the “VYPER Trade Dress”).

10. The strength and distinctiveness of the VYPER Trade Dress is buttressed by its secondary meaning in the marketplace. Plaintiff has marketed, promoted, advertised and sold the VYPER product throughout the United States and throughout the world.

11. Plaintiff has invested significant time and resources in promoting its high quality products including a successful Global Kickstarter campaign.

12. As a result of Plaintiff’s widespread use and display of the VYPER

Trade Dress, the public has come to recognize and identify products bearing the VYPER Trade Dress as emanating from Plaintiff.

13. The public recognizes that products bearing the VYPER Trade Dress constitute high quality products that conform to the specifications created by Plaintiff.

14. The VYPER Trade Dress has established strong secondary meaning and extensive goodwill.

15. In 2014, Plaintiff entered into discussions with Ralf Lindner, the Chief Executive Officer of Medisana, regarding the possible distribution of VYPER.

16. Mr. Lindner met with Anthony Katz of Hyper Ice, Inc. in San Francisco, California to discuss this agreement.

17. It was understood that Medisana would maintain the confidentiality of any information or products it obtained from Plaintiff during this process.

18. Indeed, Plaintiff sent Medisana a distributer agreement which memorialized the parties' understanding of their oral agreement to distribute Plaintiff's various products. This included a provision that Medisana would maintain the confidentiality of Plaintiff's VYPER product pending the commercial release of that product, and a covenant that Medisana would not misappropriate, without limitation, the VYPER design, which was not then generally known or available to the public. That distributor agreement also provided that any use of Plaintiff's confidential information would cause irreparable harm to Plaintiff, entitling Plaintiff to injunctive relief in addition to all other legal remedies.

19. In reliance of these agreements, Plaintiff subsequently sent Medisana two prototypes of the VYPER. At this time, the design of the VYPER was not generally known and available to the public. Accordingly, Plaintiff sent this product with the understanding that Medisana would keep that product, including its trade dress and component parts, confidential, and moreover that Medisana would return that product to Plaintiff at the conclusion of any distribution relationship, be actual

or potential.

20. Medisana never returned one of the VYPER prototype, claiming it "was lost".

21. In addition to the VYPER product, Medisana asked Plaintiff to sell and ship to Medisana for the latter's distribution products utilizing Hyper Ice's Ice Compression technology. Medisana's request in this regard was made pursuant to, and in furtherance of, its oral agreement to distribute Plaintiff's various products. Because the VYPER product was never returned, however, Plaintiff did not ship the Ice Compression products to Medisana.

22. On information and belief Medisana sent or demonstrated the VYPER to various other companies, including manufacturers and distributors. Those companies include, but are not limited to, Naum Care Corporation, Easepal Group (Shenzhen Comfort Technology Co. LTD) and Dream Factory Inc. This belief is based in part on an admission Easepal made to Plaintiff, telling Plaintiff's employee, Robert Marton, that Ralf Lindner of Medisana had brought the VYPER to Easepal with specific instructions that Easepal should copy the VYPER's design, look and feel for Medisana's benefit.

23. Plaintiff has learned on information and belief that, in furtherance of the foregoing, Medisana together with Naum Care Corporation, Easepal Group (Shenzhen Comfort Technology Co. LTD) and Dream Factory Inc. conspired to create and develop their own product line to compete with Plaintiff which utilizes Plaintiff's distinctive trade dress and proprietary technology.

24. On information and belief, Medisana had no intention of entering into any type of agreement with Plaintiff, but rather, used the guise of distribution talks in order to obtain a prototype of VYPER so that it could replicate the trade dress and proprietary technology. In fact, in June 2014, Medisana used Plaintiff's own product design to seek patent protection in Germany for its knock-off of the VYPER product.

25. In 2015, Mr. Lindner apologized to Mr. Veytia, then-Plaintiff's CEO, for having taken Plaintiff's VYPER design. Mr. Lindner acknowledged that he should have changed that design.

26. On information and belief, in early 2016, Easepal purchased a majority interest in Medisana. Upon further information and belief, Easepal now receives a royalty for every Medisana/Easepal-created "knock off" version of the VYPER product sold by third party distributors, worldwide.

27. In or about July 2016, Tomas Chan, an executive of Easepal, visited the United States for purposes of, among other things, soliciting sales of the Medisana/Easepal-created "knock off" version of the VYPER at an industry convention held in Los Angeles, California.

28. On September 4, 2016, Mr. Chan sent Plaintiff an email threatening to undercut the market for the VYPER at a loss to Easepal and to tell Plaintiff's distributor "a lot of bad things" unless Plaintiff stopped complaining of the theft of its intellectual property and the Defendants' sales of knock off products.

29. On or about September 12th, 2016, it came to Plaintiff's attention that additional versions of the VYPER "knock off" produced by Easepal have been, and continue to be, imported into the United State, where they are sold through Amazon.com and by other online retailers.

## FIRST CLAIM FOR RELIEF

### (Breach Of An Oral Contract Against Medisana)

30. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 29 above, as though set forth fully herein.

31. In 2014, Plaintiff and Medisana entered into an oral contract in which Plaintiff would provide Medisana with a prototype of the VYPER so that Medisana could evaluate whether it could assist in distributing the product throughout the world. At the conclusion of Medisana's evaluation, it was to return the VYPER's.

The existence of the VYPER and its proprietary technology were to be kept confidential at all times.

32. Plaintiff performed all conditions, covenants, and promises required on its part to be performed except those that were waived or excused by the conduct of Defendant.

33. Plaintiff materially breached the agreement by failing to perform its obligations and by refusing to perform by its actions as described above. Medisana's breaches include, but are not limited to: (1) failing to return one of the VYPER's; and (2) failing to maintain the confidentiality of the VYPER.

34. As a direct and proximate result of the Medisana's breach of the oral agreement, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Breach of Implied In Fact Contract Against Medisana)

35. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 34 above, as though set forth fully herein.

36. In 2014, Plaintiff and Medisana entered into an oral contract in which Plaintiff would provide Medisana with two prototypes of the VYPER so that Medisana could evaluate the level at which it could assist in distributing the product throughout the world. At the conclusion of Medisana's evaluation, it was to return the VYPER. The existence of the VYPER and its proprietary technology were to be kept confidential at all times.

37. The actions of the parties evidence that a contractual relationship was established.

38. The parties had a meeting of the minds as to the terms of the agreement which consisted of Defendant's promise to maintain the confidentiality of any product provided to it for consideration to be distributed throughout the world in

exchange for Plaintiff providing Medisana with said product.

39. In furtherance of the distribution and confidentiality agreement entered into by the parties', Plaintiff sent Medisana two prototypes of its VYPER product.

40. Medisana copied the product and began licensing it and selling it throughout the world.

41. Plaintiff performed all conditions, covenants, and promises required on its part to be performed except those that were waived or excused by the conduct of Defendant.

42. Defendant breached its portion of the agreement by creating a knock off VYPER product and by selling the knock off product throughout the world with the aid of several distributors and retailers.

43. As a direct and proximate result of the Medisana's breach of the covenant of good faith and fair dealing, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**(Federal Trade Dress Infringement Under 15 U.S.C. § 1125(a) Against Medisana)**

44. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 43 above, as though set forth fully herein.

45. Plaintiff has continuously and pervasively used the VYPER Trade Dress over the last several years.

46. By virtue of its substantially exclusive use of the VYPER Trade Dress, Plaintiff owns a valid and protectable interest in the VYPER Trade Dress.

47. Through the promotion, advertisement, marketing and sale of goods under the VYPER Trade Dress, the consuming public has come to recognize that the VYPER Trade Dress indicates a common origin of goods and services.

48. Defendant has created a product that constitutes a colorable imitation of

Plaintiff's VYPER Trade Dress and have induced, cooperated, lent aid, and encouraged use of the same.

49. This conduct is likely to induce consumers to believe, contrary to the fact, that Defendant's product bearing the VYPER Trade Dress is sponsored, endorsed, approved by or connected with Plaintiff.

50. Defendant's conduct is without Plaintiff's permission or authority.

51. As a result of their attempted joint business venture, Defendant had actual knowledge of Plaintiff's prior and senior rights in the VYPER Trade Dress. As a result, Defendant has committed their infringement with full knowledge of Plaintiff's rights in the VYPER Trade Dress. Thus, Defendants have willfully, deliberately, and maliciously engaged in the described acts with an intent to injury Plaintiff and to deceive the public.

52. Defendant's conduct has been and is being committed with the intent and purpose of appropriating and trading upon the goodwill and reputation associated with Plaintiff's VYPER Trade Dress. Such acts have damaged, impaired and diluted that part of Plaintiff's goodwill symbolized by its well-known VYPER Trade Dress, to Plaintiff's immediate and irreparable harm.

53. Defendant's unauthorized use of a colorable imitation of Plaintiff's VYPER Trade Dress constitutes trade dress infringement in violation of 15 U.S.C. § 1125(a). Upon information and belief, Defendant has profited from this infringement.

54. Defendant's conduct has caused damage to Plaintiff in an amount to be determined at trial, and unless restrained, will continue to seriously and irreparably impair further the value of Plaintiff's VYPER Trade Dress, for which there is no adequate remedy at law.

55. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendant from using the VYPER Trade Dress or any colorable imitation thereof. Additionally, as a result of the willful infringement, Plaintiff is

entitled to recover from Defendant all damages, including attorney's fees and a disgorgement of Defendant's illicit profits in an amount not yet known, as well as the costs of this action.

## FOURTH CLAIM FOR RELIEF

**(Unfair Competition / Fraudulent Business Practice – Violation of Cal. Bus. Prof. Code § 17200 *et seq.* Against All Defendants)**

56. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 55 above, as though set forth fully herein.

57. Defendant's acts of infringement was and are unlawful, unfair and/or fraudulent, and constitutes a violation of the Unfair Business Practices law, codified in Business & Professions, §17200, *et seq.* Among other things, such conduct is deceptive and injures consumers as well as Plaintiff and significantly harms or threatens competition.

58. Plaintiff has no adequate remedy at law for the injuries caused by Defendant's conduct, acts, and omissions, and will be irreparably harmed if such acts and omissions are not enjoined. Plaintiff is entitled to injunctive relief to prohibit these acts and omissions and/or continued threatened acts of Defendants, to prevent such irreparable harm from happening in the future.

59. Plaintiff is entitled to restitution and injunctive relief pursuant to California Business & Professions Code §17203.

## FIFTH CLAIM FOR RELIEF

**(Unfair Competition/Deceptive Advertising Bus. & Prof. Code § 17500 *et seq.* Against All Defendants)**

60. Plaintiff incorporate by reference the allegations contained in Paragraphs 1 through 59 above, as though set forth fully herein.

61. Defendant's conduct (including both acts and omissions) as alleged



herein, was and is false or misleading advertising which is likely to, and has, caused deception of the general public, and constitutes a violation of the Unfair Competition law, codified in Business & Professions, §17500, *et seq*. Among other things, such conduct is deceptive and injures consumers as well as Plaintiff.

62. Plaintiff has no adequate remedy at law for the injuries caused by Defendant's conduct, acts, and omissions, and the general public will be irreparably harmed if such acts and omissions are not enjoined. Plaintiff is entitled to injunctive relief to prohibit these acts and omissions and/or continued threatened acts of Defendant, to prevent such irreparable harm from happening in the future.

63. As a result of Defendant's conduct, acts and omissions, Plaintiff is entitled to equitable restitution of any and all profits, revenues, compensation or other payments obtained by Defendant as a result of its illicit acts.

## SIXTH CLAIM FOR RELIEF

**(Breach of Fiduciary Duty against Medisana)**

64. Plaintiff incorporate by reference the allegations contained in Paragraphs 1 through 63 above, as though set forth fully herein.

65. As a result of the distribution agreement Medisana was in a fiduciary relationship with Plaintiff.

66. Medisana took advantage of this fiduciary relationship by wrongfully acquiring Plaintiff's product with the intention of creating a colorable imitation.

67. Medisana further took advantage of this fiduciary relationship when it copied Plaintiff's product and began selling it throughout the world.

68. Medisana's conduct has caused damage to Plaintiff in an amount to be determined at trial, and unless restrained, will continue to seriously and irreparably damage Plaintiff.

/ / /

/ / /

**PRAYER**

WHEREFORE, Plaintiff prays for judgment as follows:

1. That judgment be entered in favor of Plaintiff and against Defendants on all claims for relief in Plaintiff's Complaint.

2. For damages suffered by Plaintiff in an amount to be proven at trial on all of Plaintiff's claims for relief.

3. For an award trebling of damages and/or exemplary damages because of Defendant's willful infringement.

4. For punitive damages according to proof.

5. For Plaintiff's costs of suit herein including attorneys' fees.

6. For injunctive relief to prohibit the continued acts of Defendants, including without limitation the importation into the United States of the infringing, knock-off product at issue here, by the Defendants and/or those acting in concert with the Defendants, and for purposes of preventing the irreparable harm alleged herein from happening again in the future.

7. For such other and further relief as the Court deems just and proper.

DATED: September 13, 2016 LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ Jonathan S. Pink*
Jonathan S. Pink
Attorneys for Plaintiff Hyper Ice, Inc.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. Pro. Rule 38, Plaintiff hereby demands a trial by jury on all issues set forth herein that are properly triable to a jury.

DATED: September 13, 2016 LEWIS BRISBOIS BISGAARD & SMITH LLP

By: */s/ Jonathan S. Pink*
Jonathan S. Pink
Attorneys for Plaintiff Hyper Ice, Inc.